OSCAR SJURSON, Respondent, v. E. H. STENVICK, Peter Peterson, Lena Peterson, and Ward County, North Dakota, a Municipal Corporation, E. H. STENVICK, Peter Peterson and Lena Peterson, Appellants.

(230 N. W. 600.)

Opinion filed April 24, 1930.

'H. L. Halvorson, for appellant Stenvick, and F. B. Lambert, for Peter and Lena Peterson, appellants.

*McGee & Goss* and *L. H. Breaw,* for respondent.

NUESSLE, ·J.   This action was brought by the plaintiff Sjurson in May, 1928, to determine and establish his interest in and to lot 1 of block 1, Ramstad's second addition to the city of Minot; for an accounting of the proceeds and returns of and from said property as between the plaintiff and the defendant Stenvick; and for the appointment of a receiver to collect and conserve such proceeds and returns as might thereafter accrue.

The plaintiff in his complaint alleged that he was the owner of an undivided one-half interest in and to said property by purchase on contract from the defendant Stenvick and entitled to one-half the income and returns from said property subsequent to May, 1928; that the defendants Lena Peterson and Peter Peterson were in possession of said property as the purchasers thereof under a contract from the defendant Stenvick.   Plaintiff prayed that title to an undivided one-half interest in said property subject to the rights of said Petersons therein be quieted in him; that the defendant Stenvick account for the proceeds and returns from said property; and that a receiver be appointed.   Service of the summons and complaint was made upon the several defendants in June, 1928.

Within the statutory time the defendant Stenvick answered, setting up various defenses as against the claims of the plaintiff but making no reference to the allegations in the complaint regarding the defendants Peterson.   For his relief Stenvick prayed that title be quieted in him as against the plaintiff.

The defendant, Ward county, defaulted.

In March, 1929, the defendants Peterson made and served their answer wherein they alleged that they had no knowledge with respect to the matters in controversy between the plaintiff and the defendant Stenvick; alleged ownership and possession of the premises under and by virtue of a contract of purchase with the defendant Stenvick, and that such contract had been confirmed in a suit brought by them against Stenvick, which theretofore had been tried before the Honorable C. W. Buttz, Judge of the second judicial district; alleged that the only inter-

est they had in the litigation was to see that the contract made between Peter Peterson and Stenvick be performed in accordance with the term's thereof, and that their answer was interposed after time at the request of the attorneys for the plaintiff so that the dealings between the defendants Peterson and the defendant Stenvick might be properly before the court for final determination in the action. For their relief the defendants prayed that they be permitted to perform the contract as made with Stenvick and pursuant to the determination arrived at on the trial before Judge Buttz, and that "when they have thus performed that the title be quieted in the defendant Lena Peterson as assignee of Peter Peterson." This answer was served upon both Sjurson and Stenvick and neither replied thereto.

Thereafter the case came to trial. All the parties participated and each offered evidence in support of his respective contentions. The court made findings of fact and conclusions of law favorable to the plaintiff Sjurson and adverse to the defendants Peterson and Stenvick and ordered judgment that the defendants Peterson had no right, title, or interest in and to the property; that the plaintiff Sjurson was the owner of an undivided one-half interest therein; that he was entitled to a personal judgment as against the defendant Stenvick for rents and profits collected by Stenvick, less expenses necessarily paid after crediting the amount of the unpaid purchase price and interest which Sjurson had agreed to pay for the undivided one-half interest in the property. Judgment was entered accordingly. From this judgment the defendants Peterson and Stenvick each perfected appeals demanding a trial de novo in this court.

The questions presented on this appeal are questions of fact rather than questions of law. There are many exhibits. The testimony is incoherent, inconsistent, and confusing. Therefore it is exceedingly difficult to arrive at the real facts in the case. Especially is this so with respect to the state of accounts between the parties. We think, however, that the following facts are decipherable from the record: The real property in questions is a lot in the city of Minot. Four small dwellings are situated upon it. The owner failed to pay the taxes. The property went to tax sale and a deed was issued therefor to Ward county. About May 5, 1925, Stenvick bought the property from the county for $551.06. Immediately thereafter he sold an undivided one-

half interest to the plaintiff Sjurson on contract for an agreed consideration of $600. Sjurson paid $205 down and agreed to pay the remainder, $395, out of his half of the proceeds derived from the property. He further agreed to pay half the taxes that might thereafter be assessed against the property and half the expenses for repairing and making improvements thereon. Apparently Stenvick was to handle the property and account for the proceeds to Sjurson. About June 1st, Sjurson entered into a contract with Stenvick whereby Stenvick agreed to procure for him title from Ward county to certain other property in the city of Minot. As a consideration Sjurson agreed to pay Stenvick $400 and reconvey by quit claim deed his undivided one-half interest in the property involved in this action. Sjurson delivered the money and the deed to Stenvick. Stenvick, however, was unable to procure title from Ward county to the other property as he had agreed so the deal was rescinded. Stenvick turned back to Sjurson the draft for $400 but did not return the deed. In January, 1926, Sjurson executed a mortgage on the property involved in this suit to one Olson to secure the payment of a note for $250. This mortgage is of record and unsatisfied. The note, in fact, was for money procured by Sjurson to make the initial cash payment to Stenvick.

Stenvick was in possession of the property. In May, 1926, he entered into a contract to sell it to the defendant Peter Peterson for a consideration of $2,500, Stenvick taking an automobile in trade at a valuation of $500, which amount was credited on the contract. The remainder of the purchase price, with interest at the rate of 8 per cent, was to be paid at the rate of $50 per month. Peterson occupied one of the houses. Thereafter he made payments pursuant to the terms of the contract. In September, 1926, for reasons not necessary to consider here, a new contract was entered into and substituted in the place of the first contract. Under the terms of this second contract the consideration was put at $2,500 and Peterson was credited thereon with $700, presumably the amount allowed for the automobile under the first contract and the amount of the intervening payments, the balance to be paid in monthly payments as before. But under the terms of the September contract, Peterson was required to pay the taxes for 1925 which amounted to $230.57. For some reason which does not appear, Peterson shortly after assigned this contract to his mother, the defendant Lena

Peterson. There seems to have been no consideration for this assignment and Lena Peterson disclaims any interest under it in the property. Thereafter Stenvick induced Peterson to procure a quit claim deed from Lena Peterson. This instrument, however, was not properly executed, or at least Stenvick so represented to Peterson. This deed was left with Stenvick who says he lost it. In May, 1927, a second quit claim deed was executed by Lena Peterson wherein Stenvick was named as grantee. This deed was delivered to Stenvick. There was no consideration for it. Though Peterson is inconsistent regarding this matter, there is some testimony tending to show that it was so executed and delivered in accordance with some arrangement between Stenvick and Peterson, whereby a loan might be made upon the property with which to pay Stenvick out, the title to be reconveyed to Peterson when this had been done. In the meantime payments were made by Peterson to Stenvick or his agents and collections were made by them from the occupants of the other three houses. In November, 1927, Peterson claims to have learned for the first time that the second deed executed by Lena Peterson named Stenvick as grantee. So he started an action to cancel this deed, to have his rights in the premises determined, and for an accounting. About the same time Stenvick commenced an action in forcible entry and detainer in justice court to oust Peterson from that portion of the premises which he occupied. This action was on Peterson's showing certified to the district court. Thereafter the two actions and a third action were by stipulation and order of the court consolidated and the pleadings amended so as to include all the matters in controversy between the parties. The case came to trial on February 1, 1928, before Judge Buttz of the Second District who was called in to try the same. Mr. Bradford appeared as counsel for Stenvick and Mr. Lambert for Peterson. Testimony was offered by the parties in support of their various contentions. Finally, when the trial had been concluded so far as the offering of testimony was concerned and the parties had rested, the following proceedings were had:

"By the Court: As I understand you, Mr. Bradford, you are willing in this law suit to take your money, that is measured by the second contract?

"Mr. Bradford: Yes, sir.

"The Court: And in return therefor to give a title by way of an ac-

tion to quiet title with the proper decree, which decree shall decree title in Mr. Stenvick in fee simple, and then Mr. Stenvick would deed by a warranty deed in regular form to Mr. Peterson, you having sufficient time to either bring or complete such an action and to provide such a title. That would be agreeable to you?

"Mr. Bradford: Yes, sir.

"The Court: And that is satisfactory to you, Mr. Stenvick, is it?

"Mr. Bradford: Now your Honor, just so there will be no misunderstanding, I don't apprehend that counsel on the other side would object to the judgment quieting title being in the name of Stenvick's wife, as long as there is a warranty deed?

"Mr. Lambert: Good title is all we want.

"The Court: A warranty deed from Mrs. Stenvick?

"Mr. Bradford: With Mr. Stenvick joining, providing title is correct.

"Mr. Lambert: That is all we want so we can get a loan."

The court thereupon made a statement as to the amount that he found had been paid by Peterson under the terms of the contract and said that he would order judgment conformable to what the parties had stated was satisfactory to them, that is, that Peterson should pay the remainder of the purchase price pursuant to the terms of the second contract; that Stenvick should quiet title in himself or his wife and upon a tender of a warranty deed by himself and his wife, Peterson should within ninety days complete the payment of the balance of the purchase price. The court further indicated that the amount thus paid upon the contract after allowing proper credits was $1224.94. However, no formal order for judgment was made and signed by the court and no judgment was entered.

It appears that in 1926 Stenvick had begun an action to quiet title naming as defendants those persons who appeared on the record to have some interest in the property, including Olson and the defendant Sjurson. Peterson was not a defendant. The pendency of this action was known to the parties at the time the proceedings as above stated were had before Judge Buttz and was apparently taken into consideration in the arrangement there had. In any event, after Judge Buttz had stated his conclusions as above set out, Peterson and Stenvick went out of court satisfied. Peterson continued to occupy one of the houses and paid a monthly payment of $20, which under the terms of the arrange-

ment was to be considered and treated as a payment upon the contract if the arrangement was carried through pursuant to the stipulation and statement of the court, and as rent if it were not. Peterson also paid the 1925 taxes in the amount of $230.57 and accrued penalty and interest. Stenvick or his agents collected rentals from the occupants of the other three houses. Under the arrangement made at the conclusion of the trial before Judge Buttz, Stenvick was to keep an accurate record and accounting of all payments received and collections made by him and all charges incurred or disbursements made on account of the property. However, this was not done. At the time of the trial of the instant case Stenvick had received from Peterson subsequent to February 1, 1928, and from collections made from the occupants of the other houses since that date, a considerable sum. We are unable to ascertain with any degree of certainty what that amount was. He had in the meantime incurred some obligations and made some payments on account of various items with which he should be credited, but these are likewise unascertainable from the present record.

There is some testimony in the record to the effect that prior to the time of the trial before Judge Buttz, Peterson had told certain materialmen that he had turned the property back to Stenvick and that material then being purchased should be charged to Stenvick. Further, that Stenvick had requested that such charges should be made against him. It appears that these items, which were for the repair of the houses, were in fact charged against Peterson and Stenvick. However, we consider the circumstance of this transaction of little weight here. Whatever the facts with respect to this matter were, the transaction took place prior to the trial before Judge Buttz and the bill was taken into consideration when the amount reckoned by Judge Buttz as remaining unpaid on the contract was arrived at. The amount so ascertained was agreeable to both Stenvick and Peterson. Clearly both parties stipulated in open court as to the disposition that should be made of their controversy, and just as clearly each of them acted in accordance with the terms of such stipulation with respect to that which they thereafter did. Counsel for Peterson now insists that the stipulation as made and the memorandum dictated into the record by Judge Buttz were in effect an order and amounted to a final and binding adjudication as between the parties. Whether his contention is well founded is here

immaterial. At least as against Stenvick (and Stenvick and Peterson were the only parties to that action) what transpired at that time amounted to an acknowledgment and recognition by him that the contract executed by him to Peterson in September, 1926, was still effective and in force as between them. Likewise there was an acknowledgment and recognition on the parts of both Stenvick and Peterson that the amount then remaining unpaid on the contract was $1,276.06. That Stenvick recognized the contract as effective and in force is established beyond dispute by his own testimony in this case when called for cross-examination by the plaintiff. Accordingly we hold that as between Stenvick and Peterson the second contract as made by them was in force and effect, and that the amount remaining due and unpaid thereon on February 1, 1928, was $1,276.06.

Sjurson recognized that Peterson had bought the property from Stenvick and was entitled to claim it under that contract. He so recites in his complaint. The relief which he demands is that there be an accounting between himself and Stenvick so that the court may determine the portion he shall receive of the unpaid purchase price remaining due from Peterson. In his complaint he alleges that he is ready and willing to "transfer by deed to said Petersons the said property and to perform said contract of Petersons concerning said property . . ." that he "is the sole owner of the equity and all thereof in said property subject to said contract of sale to said Peterson." In his prayer for relief he "prays accordingly that he be decreed the owner of said property subject to the interests of said Peterson therein and thereby to the exclusion of any interest in said property of said defendant Stenvick; and that accounting be had and the defendant Stenvick be compelled to account for and disclose all the receipts of rental and all payments received by him for said property during said entire period, and that the same be applied by the court in payment of any and all interest of said Stenvick in said property; and the future payments on said property be held to be solely the property of the plaintiff." He asks "no judgment against said defendants Peterson if the prayer of this petition be not resisted but complied with by him."

The court found favorably to Sjurson on the trial below; that he had purchased an undivided one-half interest in the property from Stenvick and that such contract of purchase was not rescinded and cancelled but

remained in force and effect; that the purchase price to be paid was $600; that $205 was paid in cash at the time of the making of the contract and that the remainder of $395 was discharged by the one-half share of the proceeds from the property to which Sjurson was entitled; and that there was a balance thereof remaining due and unpaid from Stenvick to Sjurson. We think, so far as the rights of Sjurson and Stenvick with respect to each other are concerned, that the court's findings to this extent are amply justified by the record.

There remain then the questions as to what the mutual rights of Peterson and Sjurson are with respect to the property, and the payments, if any, to be made by Peterson under the terms of the contract with Stenvick. It is clear that Peterson purchased from Stenvick in good faith and that Sjurson conceded this to be the fact. We conclude that the sale to Peterson by Stenvick was made pursuant to the arrangement made between the latter and Sjurson as to the handling of the property. So Peterson was justified in making payments to Stenvick. The allegations in Sjurson's complaint in this action and his conduct throughout the trial up to the time that the court's findings were announced, clearly indicate this. It follows then that Peterson is entitled to be adjudged the owner of the property as against both Sjurson and Stenvick upon the payment of the remainder, if any there be, of the amount required to satisfy the terms of the contract, taking into consideration the payments heretofore made. In this connection it must be remembered that the trial court found, and the record amply warrants this finding, that the Olson mortgage for $250 made by Sjurson to Olson and recorded January 30, 1926, was a good and valid lien upon the interest of Sjurson in the property. Accordingly the amount necessary to satisfy and discharge this mortgage must be taken into consideration in determining the equities between the parties. If the Petersons take the property subject to the lien of this mortgage, then the amount that they are otherwise required to pay under the terms of the contract must be diminished to that extent, and if this is done then the amount of the mortgage debt must likewise be taken into consideration in determining the extent of Sjurson's recovery as against Stenvick.

As between Sjurson and Stenvick, Sjurson is entitled to receive one-half of the net proceeds derived from the property, less the charges for

making repairs and improvements thereon and the expense of making the collections after crediting Stenvick with the deferred portion of the purchase price, to wit: $395, also taking into consideration the Olson mortgage in making these various adjustments, interest is to be reckoned and considered from the several dates when the obligations were incurred or the payments made.

As we have indicated above it is impossible from the record before us to ascertain with any degree of certainty the amounts that have been paid on the contract by Peterson or realized through collections from tenants on the property since the 1st day of February, 1928. Likewise it is impossible to say what charges have been incurred by Stenvick since that time for which he is entitled to credit as against Peterson or Sjurson. Accordingly, it will be necessary that the case be remanded to the district court of Ward county for the purpose of taking an accounting with respect to such payments and disbursements as between the Petersons, Stenvick, and Sjurson.

The case will therefore be remanded with directions that such an accounting be had, and if upon taking the same it appears that the balance of the purchase price of $1,276.06 remaining unpaid on February 1, 1928, and interest from that date, has been fully paid and discharged by payments and collections made since that time, then title must be quieted in the defendant Peter Peterson as against Stenvick and Sjurson; that considering the amount of $1,224.94 as received by Stenvick on account of the contract price prior to February 1, 1928, judgment will be ordered against him and in favor of the plaintiff Sjurson for such sum as on the accounting shall be found due to the latter.

BURKE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur: